IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division



| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) ) ) | 3:12-CR-137-1-AJT |
| KOLON INDUSTRIES, INC., | ) | |
| Including and through its | ) | |
| successors "Kolon Industries, Inc." | ) | |
| and "Kolon Corporation" | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United States of America, by and through the United States Attorney's Office for the Eastern District of Virginia and the Fraud Section and Computer Crime and Intellectual Property Section of the Criminal Division of the United States Department of Justice (collectively, the "United States"), and defendant, KOLON INDUSTRIES, INC., including and through its successors "Kolon Industries, Inc." and "Kolon Corporation" (collectively, the "Defendant") and its undersigned attorneys, and pursuant to the authority granted by the Boards of Directors of "Kolon Industries, Inc." and "Kolon Corporation," hereby submit and enter into this Plea Agreement ("Agreement").  The terms and conditions of the Agreement are as follows:

### The Identity of the Defendant

1.    The original KOLON INDUSTRIES, INC., was a company based in the Republic of Korea and was publicly traded on the Korean Stock Exchange under stock number 002020.  In

1

2010, subsequent to the conduct at issue in this case, the original KOLON INDUSTRIES, INC. spun off its industrial operations into a new company that assumed the English name "Kolon Industries, Inc." and traded under Korean Stock Exchange number 120110, while the remainder of the original KOLON INDUSTRIES, INC. maintained its public listing under Korean Stock Exchange number 002020, was converted into a holding company, and assumed the English name "Kolon Corporation."   For purposes of this Agreement, both "Kolon Industries, Inc." and "Kolon Corporation" are successors-in-interest to the original KOLON INDUSTRIES, INC., and both "Kolon Industries, Inc." and "Kolon Corporation" are signatories of and agree to be bound by the terms of this Agreement.   This Plea Agreement will refer to KOLON INDUSTRIES, INC., including and through its successors "Kolon Industries, Inc." and "Kolon Corporation," collectively as the "Defendant."

## The Agreement of the Defendant

2.       The Defendant agrees to plead guilty to Count One of the Superseding Indictment charging the Defendant with conspiracy to steal trade secrets, in violation of Title 18, United States Code, Section 1832(a)(5).   The maximum penalties for this offense are a fine of the greater of $5,000,000 or twice the gross pecuniary gain or loss from the offense, full restitution, criminal forfeiture, five years of probation, and a special assessment.

3.       The Defendant understands and agrees that this Agreement is between the United States Attorney's Office for the Eastern District of Virginia and the Fraud Section and Computer Crime and Intellectual Property Section of the Criminal Division of the United States Department of Justice on the one hand and the Defendant on the other hand and does not bind any other divisions or section of the Department of Justice or any other federal, state, or local prosecuting,

2

administrative, or regulatory authority.   Nevertheless, the United States will bring this Agreement and cooperation of the Defendant to the attention of other prosecuting authorities or other agencies, if requested.

4.      The Defendant agrees that this Agreement will be executed by authorized corporate representatives of "Kolon Industries, Inc." and "Kolon Corporation."   The Defendant further agrees that the Certificates of Corporate Resolutions attached as Appendices A and B were duly adopted by the Boards of Directors of "Kolon Industries, Inc." and "Kolon Corporation," respectively, and represents that the signatures on this Agreement by "Kolon Industries, Inc." and "Kolon Corporation," and their counsel, are authorized by the Boards of Directors of "Kolon Industries, Inc." and "Kolon Corporation."

5.      The Defendant agrees that it has the full legal right, power, and authority to enter into and perform all of its obligations under this Agreement.

6.      The Defendant agrees that restitution is mandatory pursuant to 18 U.S.C. § 3663A.   The Defendant agrees to the entry of a Restitution Order for the full amount of the victim's losses.   Pursuant to 18 U.S.C. § 3663A(c)(2), the Defendant agrees that an offense listed in § 3663A(c)(1) gave rise to this Agreement and as such, the victim of the conduct described in the charging instrument, statement of facts, or any related or similar conduct shall be entitled to restitution.

7.      The Defendant agrees that if it issues a press release in connection with this Agreement, the Defendant shall first consult the United States to (a) determine whether the text of the release is true and accurate with respect to matters between the United States and the Defendant, and (b) confirm that the United States has no objection to the release.

3

8.     The Defendant further agrees that in the event it sells, merges, or transfers all or substantially all of its business operations as they exist as of the date of this Agreement, whether such sale(s) is/are structured as a stock or asset sale, merger, or transfer, the Defendant shall include in any contract for sale, merger or transfer, a provision fully binding the purchaser(s) or any successor(s)-in-interest thereto to the obligations described in this Agreement.

9.     The Defendant agrees to abide by all terms and obligations of this Agreement as described herein, including the following:

a.     to plead guilty as set forth in this Agreement;

b.     to abide by all sentencing stipulations contained in this Agreement;

c.     to appear, through its duly appointed representatives, as ordered for all court appearances;

d.     to commit no further crimes;

e.     to be truthful at all times;

f.     to pay the applicable restitution, fine, and special assessment by the dates specified in this Agreement; and

g.     to abide by all material terms of the confidential settlement agreement ("the CSA") in E.I. du Pont de Nemours and Company v. Kolon Industries, Inc., Case No. 3:09-CV-58 (E.D.Va.).

10.     The Defendant further agrees to cooperate with the United States and with any other federal, state, local, or foreign law enforcement agency as directed by the United States. The cooperation includes:

4

a.     providing access to copies of non-privileged original documents and records relating to the conduct described in the Superseding Indictment or Appendix C to this Plea Agreement ("Statement of Facts") if requested to do so, with official translations upon request by the government; and

b.     providing certificates of authenticity and laying the foundation for any applicable hearsay exception concerning documents and records of the Defendant, and ensuring that record custodians are available to testify in the United States to the authenticity of and foundation for any applicable hearsay exception regarding such documents and records, if requested to do so.

## The Agreement of the United States

11.     In exchange for the Defendant's guilty plea and the complete fulfillment of all of its obligations under this Agreement, the United States agrees to dismiss Counts Two through Six of the Superseding Indictment against the Defendant.   The United States also agrees that, subject to Paragraph 32(a) below, it will not reinstate the dismissed charges or file additional criminal charges against the Defendant or any related entity concerning the conduct described in the Superseding Indictment or the Statement of Facts.   This Agreement does not preclude the United States from investigation or prosecution of any natural persons, including the prosecution of the natural persons charged in the Superseding Indictment.

## Factual Basis

12.     The Defendant is pleading guilty because it is guilty of Count One of the Superseding Indictment.   The Defendant agrees and stipulates that the factual allegations set forth

5

in Count One of the Superseding Indictment are true and correct, that it is responsible for the acts of its officers and employees described in the Statement of Facts, and that the Statement of Facts accurately reflects its criminal conduct.

## The Defendant's Waiver of Rights, Including Right to Appeal

13.     The Defendant represents to the Court that it is satisfied that its undersigned attorneys have rendered effective assistance.   The Defendant also represents that "Kolon Industries, Inc." and "Kolon Corporation" have been informed of their right to be represented by separate counsel in this proceeding, and are aware that a potential conflict of interest may arise from joint representation by a single set of counsel.   "Kolon Industries, Inc." and "Kolon Corporation" agree that any potential conflict of interest in this case is waivable, and hereby knowingly, intelligently, and voluntarily waive any such conflict of interest and elect to be jointly represented by the undersigned attorneys.

14.     The Defendant understands that by entering into this Agreement, it surrenders certain rights as provided in this Agreement.   The Defendant understands that the rights of a defendant include the following:

a.     If the Defendant persisted in a plea of not guilty to the charges, the Defendant would have the right to a speedy jury trial with the assistance of counsel.   The trial may be conducted by a judge sitting without a jury if the Defendant, the United States, and the Court all agree.

b.     At trial, the United States would be required to present witnesses and other evidence against the Defendant.   The Defendant would have the opportunity to confront those witnesses and its attorneys would be allowed

to cross-examine them.   In turn, the Defendant could, but would not be required to, present witnesses and other evidence on its own behalf.   If the witnesses for the Defendant would not appear voluntarily, it could require their attendance through the subpoena power of the court.

c.    At trial, no inference of guilt could be drawn from the Defendant's refusal to present evidence.   However, if the Defendant desired to do so, it could present evidence on its behalf.

15.    The Defendant knowingly, intelligently, and voluntarily waives its right to appeal the conviction in this case, other than an ineffective assistance of counsel claim that is cognizable on direct appeal, in exchange for the concessions made by the United States in this Agreement. The Defendant similarly knowingly, intelligently, and voluntarily waives the right to appeal the sentence imposed by the Court.   In addition, the Defendant knowingly, intelligently, and voluntarily waives the right to bring a collateral challenge pursuant to 28 U.S.C. § 2255, except for a claim of ineffective assistance of counsel.   Subject to Paragraphs 27 and 28 below, the Defendant waives all challenges and/or defenses based on service of process, personal jurisdiction, the statute of limitations, and venue with respect to any prosecution that is not time-barred on the date that this Agreement is signed in the event that: (a) the conviction is later vacated for any reason; (b) the Defendant breaches this Agreement; or (c) the plea is later withdrawn.   The United States is free to take any position on appeal or any other post-judgment matter.

### Penalty Range

16.    The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1832(a)(5) is a fine of the greater of $5,000,000 or twice the gross

pecuniary gain or loss resulting from the offense, whichever is greater; full restitution; criminal forfeiture; five years of probation; and a special assessment of $400. The Defendant agrees that, pursuant to Title 18, United States Code, Section 3571(d), this Court is authorized to impose a fine of $85,000,000 in this case, and the Defendant knowingly, intelligently, and voluntarily waives any constitutional or statutory objection to the imposition of such a fine.

17.     The parties agree that pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the Court must determine an advisory sentencing guideline range under the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"). The Court will then determine a reasonable sentence within the statutory range after considering the advisory sentencing guideline range and the factors listed in Title 18, United States Code, Section 3553(a). The parties' agreement herein to any guideline sentencing factors constitutes proof of those factors sufficient to satisfy any applicable burden of proof.

18.     The parties stipulate that the 2008 United States Sentencing Guidelines apply to this matter and to the factual predicates set forth below and that the following Sentencing Guidelines apply to Count One of the Superseding Indictment:

      a.     the base offense level is six pursuant to U.S.S.G. § 2B1.1(a)(2), and is enhanced based on the loss amount pursuant to U.S.S.G. § 2B1.1(b)(1);

      b.     pursuant to U.S.S.G. § 8C2.5, the Defendant's base culpability score is 5, is enhanced by four points pursuant to U.S.S.G. § 8C2.5(b)(2)(A) because the Defendant had 1,000 or more employees and an individual within high-level personnel participated in, condoned, or was willfully ignorant of the offense, is enhanced by an additional three points pursuant to U.S.S.G.

8

§ 8C2.5(e) due to obstruction of justice, and is reduced by one point pursuant to U.S.S.G. § 8C2.5(g) due to the Defendant's affirmative acceptance of responsibility for its criminal conduct; and

c.    pursuant to U.S.S.G. § 8C3.3(a), the fine amount in this case should be reduced below the amount otherwise required by the Sentencing Guidelines because the Defendant does not have the ability to pay a fine substantially in excess of $85,000,000 without impairing its ability to pay restitution to the victim.

### Sentence

19.    Restitution.    The parties agree that the Defendant will pay restitution to fully compensate the victim, E.I. du Pont de Nemours and Company ("DuPont"), for all losses incurred in connection with the offense, in the amount of $275,000,000, according to the schedule set forth below.   With the exception of the release of claims to funds previously collected by DuPont, all future payments shall be payable and directed to the Clerk of Court for the United States District Court for the Eastern District of Virginia ("the Clerk").   Should the Defendant elect to make payments by wire transfer, such wire transfer shall list as the beneficiary the U.S. District Courts – Eastern District of Virginia, or such other entity as specified in wire transfer instructions from the Clerk.   The Clerk shall forward the restitution payments to DuPont pursuant to the schedule set forth in the proposed Restitution Order.

a.    the Defendant shall release any and all claims to the $70,000,000 that DuPont has collected through enforcement activity of the initial judgment in E.I. du Pont de Nemours and Company v. Kolon Industries, Inc., Case

No. 3:09-CV-58 (E.D.Va.), pursuant to the CSA between Defendant and DuPont;

b. the Defendant shall make payment of $100,000,000 to the Clerk by May 8, 2015;

c. the Defendant shall make an additional payment of $26,250,000 to the Clerk by January 10, 2016;

d. the Defendant shall make an additional payment of $26,250,000 to the Clerk by January 10, 2017;

e. the Defendant shall make an additional payment of $26,250,000 to the Clerk by January 10, 2018; and

f. the Defendant shall make an additional payment of $26,250,000 to the Clerk by January 10, 2019.

20. Fine. Assuming the Defendant accepts responsibility as explained above, the parties will agree to the imposition of a fine in the amount of $85,000,000 payable to the Clerk of Court for the United States District Court for the Eastern District of Virginia. Should the Defendant elect to make payments by wire transfer, such wire transfer shall list as the beneficiary the U.S. District Courts – Eastern District of Virginia, or such other entity as specified in wire transfer instructions from the Clerk. The Defendant acknowledges that no tax deduction may be sought in connection with the payment of any part of this $85,000,000 fine. The parties agree that the fine amount shall be paid according to the following schedule:

a. the Defendant shall make a payment of $10,000,000 within ten business days of the time of sentencing;

10

b.      the Defendant shall make an additional payment of $10,000,000 by April 30, 2016;

c.      the Defendant shall make an additional payment of $20,000,000 by April 30, 2017;

d.      the Defendant shall make an additional payment of $20,000,000 by April 30, 2018; and

e.      the Defendant shall make an additional payment of $25,000,000 by April 30, 2019.

21.     The parties agree that a fine amount of $85,000,000 is appropriate based on the following factors:

a.      the Defendant's remedial efforts, including the development and implementation of compliance and training programs and policies;

b.      the Defendant's agreement to pay restitution in an amount that compensates DuPont for its losses from the conduct described in the Statement of Facts;

c.      additional remedial measures set forth in the CSA;

d.      the Defendant's termination of all individuals charged in the Superseding Indictment prior to the entry of this Agreement;

e.      the Defendant's agreement to cooperate as set forth in Paragraph 10 of this Agreement; and

f.      upon examination of the Defendant's books and records, and after accounting for the Defendant's restitution obligation under this Agreement,

the Defendant appears to be unable to pay a fine substantially in excess of $85,000,000.

22.  <u>Mandatory Special Assessment</u>.  Defendant shall pay to the Clerk of the Court for the United States District Court for the Eastern District of Virginia within five business days of the time of sentencing the mandatory special assessment of $400.

23.  The parties have agreed that the disposition described herein represents an appropriate disposition of the case based upon the following factors:

     a.  by entering and fulfilling the obligations under the Agreement, the Defendant has demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct;

     b.  the Defendant has implemented a compliance and training program designed to detect and prevent violations of United States and foreign theft of trade secrets laws;

     c.  the Defendant has terminated and/or will terminate the individuals charged in the Superseding Indictment prior to the entry of this Agreement;

     d.  the Defendant has agreed to other affirmative steps to ensure protection of the victim's technology, as set forth in the CSA; and

     e.  the Defendant has agreed to cooperate as set forth in Paragraph 10 of this Agreement.

24.  The parties agree not to seek any adjustments to, or departures from, the agreed upon payment of restitution in the amount of $275,000,000 and a fine in the amount of

$85,000,000, nor to the schedules for the payment of the restitution and fine set forth in this Agreement.

25.    Compliance and Training Program.   The United States acknowledges that, in response to the conduct at issue in this case, the Defendant has implemented a compliance and training program that is specifically designed to prevent a recurrence of trade secrets theft or other unlawful acquisition of intellectual property by the Defendant and its officers and employees.

26.    Organizational Probation.   The parties agree that a five-year term of organizational probation is appropriate in this case and shall include, as conditions of probation, (a) compliance with the schedule of payments for restitution, fine, and special assessment as set forth herein; (b) any other conditions the Court orders.   In light of the terms of the CSA, the United States agrees not to seek the imposition of an independent monitor, or any of the other conditions set forth in Section 8D1.4 of the Sentencing Guidelines, as a condition of organizational probation.

27.    Because this Agreement is made under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Defendant understands that, if the Court accepts this Agreement, the Court will be bound by its terms.   If, however, the Court rejects this Agreement and does not agree to impose the specific sentence as agreed to by the Parties herein, neither the United States nor the Defendant shall be obligated to proceed under the terms of this Agreement, each shall be restored to their full rights, claims and defenses without prejudice and neither shall be bound by any statement contained in the Statement of Facts.   For avoidance of doubt, in that circumstance, none of the waiver provisions of this Agreement shall operate against the Defendant.

28.  The United States and the Defendant understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in this Plea Agreement.

a.  If the Court does not accept the recommended sentence, the United States and the Defendant agree that this Plea Agreement, except for Paragraph 28(b) below, shall be rendered void.

b.  If the Court does not accept the recommended sentence, the Defendant shall be free to withdraw its guilty pleas pursuant to Fed. R. Crim. P. 11(c)(5) and (d).  If the Defendant withdraws its pleas of guilty, this Plea Agreement, the Statement of Facts, the guilty pleas, and any statement made in the course of plea discussions with an attorney for the government shall not be admissible against the Defendant in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410.

## Waiver of Presentence Investigation and Consolidation of Plea and Sentencing

29.  The parties agree, subject to the Court's approval, to waive the requirement for a presentence report, pursuant to Federal Rule of Criminal Procedure 32(c)(1)(A), based on the Court's finding that the record contains information sufficient to enable the Court to meaningfully exercise its sentencing power.  However, the parties agree that in the event the Court orders the preparation of a presentence report prior to sentencing, such order will not affect the Agreement set forth herein.  Additionally, if the Court directs the preparation of a presentence report, the United States will fully inform the preparer of the report and the Court of the facts and law related to Defendant's case.

14

30.     The parties further agree to request that the Court combine the entry of the plea and sentencing into one proceeding.   However, the parties agree that in the event the Court orders that the entry of the guilty plea and the sentencing hearing occur during separate proceedings, such an order will not affect the Agreement set forth herein.

## Breach of Agreement

31.     If the Defendant breaches any term of this Agreement, or commits any new criminal offense between signing this Agreement and sentencing, the United States is relieved of its obligations under this Agreement, but the Defendant may not withdraw its guilty plea. Whether the Defendant has breached any provision of this Agreement shall be determined by the Court in an appropriate proceeding at which the Defendant's disclosures and documentary evidence shall be admissible and at which the United States shall be required to establish a breach of this Agreement by a preponderance of the evidence.   The United States shall not seek a determination by the Court on a breach premised upon the Defendant's alleged failure to abide by terms of the CSA unless the United States first determines, in its discretion, that any alleged breach of the CSA was material.

32.     In the event of a breach of this Agreement by the Defendant:

a.     the United States will be free to reinstitute Counts Two through Six of the Superseding Indictment against the Defendant, and to seek additional penalties including criminal forfeiture of all proceeds realized by the Defendant, directly and indirectly, from the conduct at issue in this case, as well as to institute any other criminal charge or any civil or administrative action that was not filed as a result of this Agreement;

15

b.    any prosecution, including the prosecution that is the subject of this Agreement, may be premised upon any information provided, or statements made, by the Defendant, including the Statement of Facts, and any and all such information, statements, and leads derived therefrom may be used against the Defendant;

c.    the Defendant waives any right to claim that any statements made pursuant to this or any other agreement with the United States, including the Statement of Facts, should be excluded or suppressed under Fed. R. Evid. 410, Fed. R. Crim. P. 11(f), the Sentencing Guidelines, or any other provision of the U.S. Constitution or federal law;

d.    the Defendant waives all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution or action, except to the extent that such defenses existed as of the date of the signing of this Agreement;

e.    the Defendant expressly acknowledges and incorporates by reference the Tolling Agreement dated March 13, 2012, that has previously been entered into between the Defendant and the United States; and

f.    the Defendant waives any and all objections to service of process and attachment of personal jurisdiction, and agrees to appear as ordered by this Court in any criminal, civil, or administrative action arising from a breach of this Agreement, including any proceeding to determine whether this

Agreement has been breached or whether the Defendant has violated any term of the organizational probation imposed by the Court.

33.     In the event that the Defendant fails to appear as ordered by this Court in any criminal, civil, or administrative action arising from the breach of this Agreement, including any proceeding to determine whether this Agreement has been breached or whether the Defendant has violated any term of the organizational probation imposed by the Court, the Defendant agrees to waive its right to contest any judgment or sanction entered against it as a result of its non-appearance.

## Complete Agreement

34.     This document contains the full extent of the agreement between the parties. There are no other promises or agreements, express or implied.   Any modification of this Agreement shall be valid only if set forth in writing in a supplemental or revised plea agreement signed by all parties.


**AGREED:**

**FOR KOLON INDUSTRIES, INC. (KSX NUMBER 120110):**


By:     _____
        Ee Gu Kang
        Vice President

By:     _____
        Heiri Lee
        General Counsel

By:     _____
        Jeffrey G. Randall

17

Mark D. Pollack
Paul Hastings LLP
Counsel for Kolon Industries, Inc.
and Kolon Corporation

**FOR KOLON CORPORATION (KSX NUMBER 002020):**

By:  _____

Kwang Bok Yoon
Vice President

By:  _____

Yongjoo Jeon
Corporate Counsel and Deputy General Manager

By:  _____

Jeffrey G. Randall
Mark D. Pollack
Paul Hastings LLP
Counsel for Kolon Industries, Inc.
and Kolon Corporation

**FOR THE UNITED STATES:**

DANA J. BOENTE
United States Attorney

By:  _____

Kosta S. Stojilkovic
Assistant U.S. Attorney
Matthew Burke
Assistant U.S. Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, VA  22314
Tel:    (703) 299-3700
Fax:    (703) 299-3981

18

kosta.stojilkovic@usdoj.gov
matthew.burke@usdoj.gov


ANDREW WEISSMANN
Chief, Fraud Section
Criminal Division, U.S. Department of Justice

By:

John W. Borchert
Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, N.W.
Washington, DC   20005
Tel:   (202) 514-2000
Fax:   (202) 514-7021
john.borchert@usdoj.gov

JOHN LYNCH
Chief, Computer Crime and Intellectual Property
Section, Criminal Division
United States Department of Justice

By:

Rodolfo Orjales
Senior Counsel
United States Department of Justice
Criminal Division, Computer Crime and
Intellectual Property Section
1301 New York Avenue, N.W.
Washington, DC   20005
Tel:   (202) 305-9200
Fax:   (202) 305-1744
rudy.orjales@usdoj.gov

19

## OFFICER'S CERTIFICATE: KOLON INDUSTRIES, INC.

I have read this Agreement and carefully reviewed every part of it with counsel for Kolon Industries, Inc. (KSX No. 120110) ("Kolon Industries"). I understand the terms of this Agreement and voluntarily agree, on behalf of Kolon Industries to each of its terms. Before signing this Agreement on behalf of Kolon Industries, I consulted with counsel for Kolon Industries. Counsel fully advised me of Kolon Industries' rights, possible defenses, the sentencing guidelines provisions, and the consequences of entering into this Agreement.

I have carefully reviewed this Agreement with the Board of Directors of Kolon Industries. I have advised, and caused outside counsel for Kolon Industries to advise, the Board fully of Kolon Industries' rights, possible defenses, the sentencing guidelines provisions, and the consequences of entering into this Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me to enter into this Agreement. I am also satisfied with counsel's representation in this matter, and knowingly, intelligently, and voluntarily waive any potential conflict of interest arising from the fact that counsel also represent Kolon Corporation (KSX No. 002020) in this matter.

I certify that I am an officer of Kolon Industries and that I have been duly authorized by Kolon Industries to execute this Agreement on its behalf.

Date: 04/30/2015

KOLON INDUSTRIES, INC.
(KSX NUMBER 120110)

By: _____
Ee Gu Kang
Vice President
Kolon Industries

20

## OFFICER'S CERTIFICATE: KOLON CORPORATION

I have read this Agreement and carefully reviewed every part of it with counsel for Kolon Corporation (KSX No. 002020) ("Kolon Corporation").   I understand the terms of this Agreement and voluntarily agree, on behalf of Kolon Corporation to each of its terms.   Before signing this Agreement on behalf of Kolon Corporation, I consulted with counsel for Kolon Corporation. Counsel fully advised me of Kolon Corporation' rights, possible defenses, the sentencing guidelines provisions, and the consequences of entering into this Agreement.

I have carefully reviewed this Agreement with the Board of Directors of Kolon Corporation.   I have advised, and caused outside counsel for Kolon Corporation to advise, the Board fully of Kolon Corporation' rights, possible defenses, the sentencing guidelines provisions, and the consequences of entering into this Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me to enter into this Agreement.   I am also satisfied with counsel's representation in this matter, and knowingly, intelligently, and voluntarily waive any potential conflict of interest arising from the fact that counsel also represent Kolon Industries, Inc. (KSX No. 120110) in this matter.

I certify that I am an officer of Kolon Corporation and that I have been duly authorized by Kolon Corporation to execute this Agreement on its behalf.

Date: _30, APR 2015_

KOLON CORPORATION
(KSX NUMBER 002020)

By: _Yoon Kwang Bok_
Kwang Bok Yoon
Vice President
Kolon Corporation

21

## CERTIFICATE OF COUNSEL

We are counsel for Kolon Industries, Inc. (KSX No. 120110) ("Kolon Industries") and Kolon Corporation (KSX No. 002020) ("Kolon Corporation") in the matter covered by this Agreement.   In connection with such representation, we have examined relevant Kolon Industries and Kolon Corporation documents and have discussed this Agreement with the Boards of Directors of Kolon Industries and Kolon Corporation.   Further, we have carefully reviewed every part of this Agreement with the Boards of Directors and General Counsel of Kolon Industries and Kolon Corporation.   We have fully advised them of Kolon Industries' and Kolon Corporation's rights, possible defenses, the sentencing guidelines provisions, and the consequences of entering into this Agreement.   We have also fully advised Kolon Industries and Kolon Corporation of their rights to be represented by separate counsel in this matter, and both Kolon Industries and Kolon Corporation retained both Korean and U.S.-based counsel to advise them of any potential conflict and its waivability.   Based on our review of the foregoing materials and discussion, we are of the opinion that Kolon Industries and Kolon Corporation have made a knowing, intelligent, and voluntary decision to negotiate this Agreement through a single set of counsel, and that any potential conflict of interest implicated by such an arrangement is waivable and has been knowingly, intelligently, and voluntarily waived by Kolon Industries and Kolon Corporation with the advice of separate counsel.   Moreover, we have been advised by Lee & Ko LLC and Bae, Kim & Lee LLC, Korean counsel for Kolon Industries and Kolon Corporation, respectively, that the Boards of Directors for Kolon Industries and Kolon Corporation were duly convened on April 23, 2015 and by the resolutions of such Boards of Directors, Kolon Industries' and Kolon Corporation's representatives have been duly authorized to enter into this Agreement on behalf of

their respective companies.   As confirmed in the Certificate of Korean Counsel: Kolon Industries

and Certificate of Korean Counsel: Kolon Corporation, this Agreement has been duly and validly

authorized, executed, and delivered on behalf of Kolon Industries and Kolon Corporation and is a

valid and binding obligation of Kolon Industries and Kolon Corporation.   To our knowledge,

Kolon Industries' and Kolon Corporation's decision to enter into this Agreement is an informed

and voluntary one.

Date: ___4/30/15___                          _____
                                             Jeffrey G. Randall
                                             Mark D. Pollack
                                             Paul Hastings LLP
                                             Counsel for Kolon Industries, Inc.
                                             and Kolon Corporation

## CERTIFICATE OF KOREAN COUNSEL: KOLON INDUSTRIES

We are Korean counsel for Kolon Industries, Inc. (KSX No. 120110) ("Kolon Industries") in the matter covered by this Agreement.  In connection with such representation, we have examined relevant Kolon Industries documents and have discussed this Agreement with the Board of Directors of Kolon Industries.  Further, we have carefully reviewed every part of this Agreement with the Board of Directors and General Counsel of Kolon Industries.  Based on our review of the foregoing materials and discussion, we are of the opinion that the Board of Directors of Kolon Industries was duly convened on April 23, 2015, and by the resolution of such Board of Directors, Kolon Industries' representatives have been duly authorized to enter into this Agreement on behalf of Kolon Industries.  Accordingly, we are of the view that this Agreement has been duly and validly authorized, executed and delivered on behalf of Kolon Industries, and this Agreement is a valid and binding obligation of Kolon Industries.  Our opinions contained in this Certificate relate to matters of Korean law only, and we do not express any opinions of any matters governed by or construed in accordance with the laws of any other jurisdiction.

Date: _April 23, 2015_

_____
Jong Seok Lee
Lee & Ko LLC
Korean Counsel for Kolon Industries

24

## CERTIFICATE OF KOREAN COUNSEL: KOLON CORPORATION

We are Korean counsel for Kolon Corporation, Inc. (KSX No. 002020) ("Kolon Corporation") in the matter covered by this Agreement.   In connection with such representation, we have examined relevant Kolon Corporation documents and have discussed this Agreement with the Board of Directors of Kolon Corporation.   Further, we have carefully reviewed every part of this Agreement with the Boards of Directors and General Counsel of Kolon Corporation. Based on our review of the foregoing materials and discussion, we are of the opinion that the Board of Directors of Kolon Corporation was duly convened on April 23, 2015, and by the resolution of such Board of Directors, Kolon Corporation representatives have been duly authorized to enter into this Agreement on behalf of Kolon Corporation.   Accordingly, we are of the view that this Agreement has been duly and validly authorized, executed and delivered on behalf of Kolon Corporation, and this Agreement is a valid and binding obligation of Kolon Corporation.   Our opinions contained in this Certificate relate to matters of Korean law only, and we do not express any opinions of any matters governed by or construed in accordance with the laws of any other jurisdiction.

Date: _April 23, 2015_

_____
Ri Bong Han
Bae Kim & Lee LLC
Korean Counsel for Kolon Corporation

25

KS/MDP

## APPENDIX A

## CERTIFICATE OF CORPORATE RESOLUTIONS: KOLON INDUSTRIES, INC.

WHEREAS, Kolon Industries, Inc. (KSX No. 120110) ("Kolon Industries") has been engaged in discussions with the United States Attorney's Office for the Eastern District of Virginia and the Fraud Section and Computer Crime and Intellectual Property Section of the Criminal Division of the United States Department of Justice (collectively, "the United States"), regarding the charges in the Superseding Indictment; and

WHEREAS, in order to resolve such charges, it is proposed that Kolon Industries enter into a certain agreement with the United States; and

WHEREAS, Kolon Industries' Chief Executive Officer, Dong Moon Park, together with outside counsel for Kolon Industries, have advised the Board of Directors of Kolon Industries of its rights, possible defenses, the Sentencing Guidelines' provisions, and the consequences of entering into such agreement with the United States;

Therefore, the Board of Directors has RESOLVED that:

1.      Kolon Industries (a) pleads guilty to Count One of the Superseding Indictment pursuant to a plea agreement with the United States; and (b) agrees to pay restitution totaling $275,000,000 and monetary criminal penalties totaling $85,000,000, jointly and severally with Kolon Corporation (KSX No. 002020), pursuant to the schedule set forth in the plea agreement;

2.      The Vice President of Kolon Industries, Ee Gu Kang, is hereby authorized, empowered, and directed, on behalf of Kolon Industries, to execute the Plea Agreement substantially in such form as reviewed by this Board of Directors at this meeting with such changes as the Vice President of Kolon Industries, Ee Gu Kang, may approve;

3.      The Vice President of Kolon Industries, Ee Gu Kang, is hereby authorized, empowered, and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms, or provisions of any agreement or other documents as may be necessary or appropriate, to carry out and effectuate the purpose and intent of the foregoing resolutions; and

4.      All of the actions of the Vice President of Kolon Industries, Ee Gu Kang, which actions would have been authorized by the foregoing resolutions except that such actions were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved, and adopted as actions on behalf of Kolon Industries.

Date: April 23, 2015

By: _____
Dong Moon Park
Chief Executive Officer and
Representative Director of
Kolon Industries, Inc.

A-2

첨부서류 A

## 기업 결의사항 증명서: 코오롱인더스트리 주식회사

코오롱인더스트리 주식회사 (한국거래소 종목코드 120110) (이하

"코오롱인더스트리"라 함)은 미국 버지니아 동부지역 검찰과 미국 법무부 형사국의

사기, 컴퓨터 범죄 및 지적재산과 (이하 "미국"이라 함)와 수정기소장에 나와 있는

혐의에 관해 논의를 하였고;

이러한 혐의를 해소하기 위해, 코오롱인더스트리는 미국과 특정한 합의서를

체결할 것을 제안 받았고;

코오롱인더스트리의 사장 박동문과 코오롱인더스트리의 사외 변호사는

코오롱인더스트리의 이사회에 그들의 권리, 가능한 방어 방법, 양형 기준 규정 및

미국과 그러한 합의문에 서명하는 것의 결과에 대해 자문을 제공하였습니다.

그 결과, 이사회는 다음 사항을 결의하였습니다:

1. 코오롱인더스트리는 (a) 미국과의 유죄인정합의서 (plea agreement)에

따라 수정 기소장의 혐의 1 에 대해 유죄를 인정하고, (b) 유죄인정합의서에 나와

있는 일정에 맞춰, 주식회사 코오롱 (한국거래소 종목코드 002020)과 연대하여 총

275 백만 달러의 피해 보상금 및 85 백만 달러의 형사벌금을 지불할 것에 동의하고;

2. 이에, 코오롱인더스트리의 강이구 상무는 자신이 승인할 수정 문구를

반영한, 금번 이사회 회의에서 검토한 것과 상당히 유사한 형태의 유죄인정계약서에

대하여, 코오롱인더스트리를 대표하여 서명할 수 있도록 승인받고, 권한을 부여받고,

지시받고;

3. 이에, 코오롱인더스트리의 강이구 상무는 필요하거나 적절할 경우 어떠한

행동이든 취하고, 필요하거나 적절할 경우 어떠한 계약서나 서류의 형태, 조건,

조항에 대해 승인하고, 상기 결의사항의 목적과 의도를 수행하고 달성할 수 있도록

승인받고, 권한을 부여받고, 지시받고;

4. 이에, 이 결의 사항을 채택하기 이전에 행해진 행동을 제외하고는, 상기

결의에 의해 승인받은, 코오롱인더스트리의 강이구 상무가 행할 모든 행동은, 별도로

코오롱인더스트리를 위한 행동임이 인가되고, 확인되고, 승인되고, 채택되는

바입니다.

날짜: 2015 년 4 월 23

서명: _____

코오롱인더스트리 주식회사
대표이사 사장 박동문

## APPENDIX B

## CERTIFICATE OF CORPORATE RESOLUTIONS: KOLON CORPORATION

WHEREAS, Kolon Corporation (KSX No. 002020) ("Kolon Corporation") has been

engaged in discussions with the United States Attorney's Office for the Eastern District of

Virginia and the Fraud Section and Computer Crime and Intellectual Property Section of the

Criminal Division of the United States Department of Justice (collectively, "the United States"),

regarding the charges in the Superseding Indictment; and

WHEREAS, in order to resolve such charges, it is proposed that Kolon Corporation

enter into a certain agreement with the United States; and

WHEREAS, Kolon Corporation' Chief Executive Officer, Byung Duk Ahn, together

with outside counsel for Kolon Corporation, have advised the Board of Directors of Kolon

Corporation of its rights, possible defenses, the Sentencing Guidelines' provisions, and the

consequences of entering into such agreement with the United States;

Therefore, the Board of Directors has RESOLVED that:

1.      Kolon Corporation (a) pleads guilty to Count One of the Superseding Indictment

pursuant to a plea agreement with the United States; and (b) agrees to pay restitution totaling

$275,000,000 and monetary criminal penalties totaling $85,000,000, jointly and severally with

Kolon Industries, Inc. (KSX No. 120110), pursuant to the schedule set forth in the plea

agreement;

2.      The Vice President of Kolon Corporation, Kwang Bok Yoon, is hereby

authorized, empowered, and directed, on behalf of Kolon Corporation, to execute the Plea

Agreement substantially in such form as reviewed by this Board of Directors at this meeting with

such changes as the Vice President of Kolon Corporation, Kwang Bok Yoon, may approve;

3.    The Vice President of Kolon Corporation, Kwang Bok Yoon, is hereby authorized, empowered, and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms, or provisions of any agreement or other documents as may be necessary or appropriate, to carry out and effectuate the purpose and intent of the foregoing resolutions; and

4.    All of the actions of the Vice President of Kolon Corporation, Kwang Bok Yoon, which actions would have been authorized by the foregoing resolutions except that such actions were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved, and adopted as actions on behalf of Kolon Corporation.

Date: April 23, 2015

By:    _____

Byung Duk Ahn
Chief Executive Officer and
Representative Director of
Kolon Corporation

첨부서류 A

## 기업 결의사항 증명서: 주식회사 코오롱

주식회사 코오롱 (한국거래소 종목코드 002020) (이하 "주식회사 코오롱"이라

함)은 미국 버지니아 동부지역 검찰과 미국 법무부 형사국의 사기, 컴퓨터 범죄 및

지적재산과 (이하 "미국"이라 함)와 수정기소장에 나와 있는 혐의에 관해 논의를

하였고;

이러한 혐의를 해소하기 위해, 주식회사 코오롱은 미국과 특정한 합의서를

체결할 것을 제안 받았고;

주식회사 코오롱의 사장 안병덕과 주식회사 코오롱의 사외 변호사는

주식회사 코오롱의 이사회에 그들의 권리, 가능한 방어 방법, 양형 기준 규정 및

미국과 그러한 합의문에 서명하는 것의 결과에 대해 자문을 제공하였습니다.

그 결과, 이사회는 다음 사항을 결의하였습니다:

1. 주식회사 코오롱은 (a) 미국과의 유죄인정합의서 (plea agreement)에 따라

수정 기소장의 혐의 1 에 대해 유죄를 인정하고, (b) 유죄인정합의서에 나와 있는

일정에 맞춰, 코오롱인더스트리 주식회사 (한국거래소 종목코드 120110)와 연대하여

총 275 백만 달러의 피해 보상금 및 85 백만 달러의 형사벌금을 지불할 것에

동의하고;

2. 이에, 주식회사 코오롱의 윤광복 상무는 자신이 승인할 수정 문구를 반영한,

금번 이사회 회의에서 검토한 것과 상당히 유사한 형태의 유죄인정계약서에 대하여,

주식회사 코오롱을 대표하여 서명할 수 있도록 승인받고, 권한을 부여받고, 지시받고;

3. 이에, 주식회사 코오롱의 윤광복 상무는 필요하거나 적절할 경우 어떠한

행동이든 취하고, 필요하거나 적절할 경우 어떠한 계약서나 서류의 형태, 조건,

조항에 대해 승인하고, 상기 결의사항의 목적과 의도를 수행하고 달성할 수 있도록

승인받고, 권한을 부여받고, 지시받고;

4. 이에, 이 결의 사항을 채택하기 이전에 행해진 행동을 제외하고는, 상기

결의에 의해 승인받은, 주식회사 코오롱의 윤광복 상무가 행할 모든 행동은, 별도로

주식회사 코오롱을 위한 행동임이 인가되고, 확인되고, 승인되고, 채택되는 바입니다.

날짜: 2015 년 4 월 _23_ .

서명: _____

주식회사 코오롱
대표이사 사장 안병덕

# APPENDIX C

## STATEMENT OF FACTS

The following Statement of Facts is incorporated by reference as Part of the Plea Agreement (the "Agreement") between the United States Attorney's Office for the Eastern District of Virginia and the Fraud Section and Computer Crime and Intellectual Property Section of the Criminal Division of the United States Department of Justice (collectively, the "United States") on the one hand, and the defendant, KOLON INDUSTRIES, INC., including and through its successors "Kolon Industries, Inc." and "Kolon Corporation" (collectively, the "Defendant"), on the other hand.  The parties agree that, if this matter were to proceed to trial, the United States would prove the following facts beyond a reasonable doubt:

## I.     Relevant Entities

1.       E.I. du Pont de Nemours and Company ("DuPont") was headquartered in Wilmington, Delaware, and was one of the largest chemical companies in the world.  DuPont manufactured Kevlar® ("Kevlar"), a high strength para-aramid fiber used in a variety of applications, including body armor, fiberoptic cables, and automotive and industrial products. DuPont manufactured Kevlar at its Spruance Plant, a facility in Richmond, Virginia, which is within the Eastern District of Virginia, at a facility in Maydown, Ireland, and at a facility in Japan, through a Japanese joint venture.

2.       DuPont-Toray Company Ltd. ("DuPont-Toray") was a joint venture between DuPont's Japanese affiliate and a Japanese company, Toray Industries, Inc.  At all relevant times herein, DuPont-Toray manufactured Kevlar at a facility in Tokai, Japan.

3.       At all relevant times herein, DuPont and DuPont-Toray produced Kevlar for, and placed it in, interstate and foreign commerce.

4.     Teijin Limited was one of the largest chemical companies in Japan. In or about 2000, Teijin Limited acquired the assets of a company headquartered in the Netherlands that became known as Teijin Twaron B.V. ("Teijin Twaron"). At the same time, Teijin Limited acquired the assets of a company headquartered in Conyers, Georgia, that became known as Teijin Twaron USA Inc. ("Teijin Twaron USA"). In or about September 2007, Teijin Twaron and Teijin Twaron USA changed their names to Teijin Aramid B.V. and Teijin Aramid USA Inc., respectively. Teijin Limited and its subsidiaries are referred to collectively in this Indictment as "Teijin."

5.     At all relevant times herein, Teijin manufactured and sold Twaron® ("Twaron"), a high strength para-aramid fiber. Teijin produced Twaron for, and placed it in, interstate and foreign commerce.

6.     The original KOLON INDUSTRIES, INC., was a company based in the Republic of Korea and was publicly traded on the Korean Stock Exchange under stock number 002020. In 2010, subsequent to the conduct at issue in this case, the original KOLON INDUSTRIES, INC. spun off its industrial operations into a new company that assumed the English name "Kolon Industries, Inc." and traded under Korean Stock Exchange number 120110, while the remainder of the original KOLON INDUSTRIES, INC. maintained its public listing under Korean Stock Exchange number 002020, was converted into a holding company, and assumed the English name "Kolon Corporation." For purposes of this case, both "Kolon Industries, Inc." and "Kolon Corporation" are successors in interest to the original KOLON INDUSTRIES, INC., and both "Kolon Industries, Inc." and "Kolon Corporation" are signatories of, and agree to be bound by the terms of, this Statement of Facts. This Statement of Facts will refer to KOLON

INDUSTRIES, INC., including and through its successors "Kolon Industries, Inc." and "Kolon Corporation," collectively as "the Defendant."

## II.   The Manner and Means of the Conspiracy

7.     At all relevant times herein, the Defendant developed and manufactured Heracron® ("Heracron"), a para-aramid fiber that competed with Kevlar and Twaron and was used in similar applications.

8.     During the development of Heracron, the Defendant identified and retained multiple consultants to provide information regarding the manufacture and sale of Kevlar. Several of the consultants retained by the Defendant were former DuPont employees who had significant experience in the manufacture and sale of Kevlar. These consultants included Edward Schulz ("Schulz"), who was employed by DuPont from in or about 1969 until in or about 2000, and Michael Mitchell ("Mitchell"), who was employed by DuPont from in or about 1982 until in or about 2006. Among other things, Schulz was responsible for technical research and development relating to Kevlar. Among other things, Mitchell was responsible for sales and marketing of Kevlar.

9.     After departing from DuPont, Schulz and Mitchell retained certain confidential and proprietary information belonging to, and which rightfully should have been returned to, DuPont. Schulz and Mitchell retained such information in violation of the terms of their employment and termination agreements with DuPont.

10.    The Defendant also retained other consultants who were former employees of DuPont and DuPont-Toray. The consultants also had technical research and development experience relating to Kevlar and continued to possess knowledge of certain confidential and proprietary DuPont information after separating from DuPont and DuPont-Toray.

C-3

11.     As part of its consulting program, certain current and former employees of the Defendant interfaced with Schulz, Mitchell and other former DuPont and DuPont-Toray employees hired by the Defendant as consultants to obtain information about Kevlar. The Defendant understood that certain of the information about Kevlar that it sought to obtain from the consultants included confidential and proprietary information belonging to DuPont.

12.     DuPont treated certain of the technical information related to the commercial manufacture of Kevlar as confidential and proprietary, including certain design parameters and settings of various manufacturing equipment and processes, as well as certain mathematical equations and scientific concepts applicable to Kevlar manufacture. The Defendant and its employees involved in the debriefing of the consultants understood that some of the information they were asking for included technical information that was confidential and proprietary to DuPont.

13.     DuPont also maintained certain business information regarding Kevlar as confidential and proprietary, including detailed breakdowns of DuPont's capabilities and costs for the full line of its Kevlar products; certain information concerning the costs and profit margins associated with the Kevlar manufacturing process; certain details concerning DuPont's customers for Kevlar; and certain of DuPont's business plans for the para-aramid market. The Defendant and its employees involved in the debriefing of the consultants understood that some of the information they were asking for included business information that was confidential and proprietary to DuPont.

## III.    Conspiratorial Agreement

14.     Beginning no later than June 2006, and continuing until in or about February 2009, in the Eastern District of Virginia and elsewhere, the Defendant did knowingly and willfully combine, conspire, confederate, and agree with others, with intent to convert *trade*

secrets that were related to and included in a product produced for and placed in interstate and foreign commerce to the economic benefit of someone other than the owners of the trade secrets, and intending and knowing that the offense would injure the owners of that trade secrets, to:

a.      steal and without authorization appropriate, take, carry away, and conceal, and by fraud, artifice, and deception obtain trade secrets, in violation of Title 18, United States Code, Section 1832(a)(1);

b.      without authorization copy, duplicate, sketch, draw, photograph, download, upload, alter, destroy, photocopy, replicate, transmit, deliver, send, mail, communicate, and convey trade secrets, in violation of Title 18, United States Code, Section 1832(a)(2); and

c.      receive, buy, and possess trade secrets, knowing the same to have been stolen and appropriated, obtained, and converted without authorization, in violation of Title 18, United States Code, Section 1832(a)(3);

15.     As part of this conspiratorial agreement, from in or about June 2006 to in or about March 2008, Schulz met with employees of the Defendant on at least nine occasions. In or about August 2006, Schulz entered into a consulting agreement with the Defendant. During the consulting sessions, the Defendant knowingly and willfully combined, conspired, and sought to obtain from Schulz DuPont trade secrets and other confidential and proprietary information relating to the manufacture of Kevlar. It was the object and purpose of this aspect of the conspiracy for Schulz to provide the Defendant with confidential and proprietary DuPont information in order to improve the Defendant's Heracron product.

16.     Further, as part of this conspiratorial agreement, from in or about March 2007 through in or about August 2008, employees of the Defendant met with Mitchell on at least six

C-5

occasions. In or about March 2007, Mitchell entered into a consulting contract with the Defendant. During the consulting sessions, the Defendant knowingly and willfully combined, conspired, and sought to obtain from Mitchell DuPont trade secrets and other confidential and proprietary information relating to the manufacture and sale of Kevlar. It was the object and purpose of this aspect of the conspiracy for Mitchell to provide the Defendant with confidential and proprietary information in order to improve the Heracron product and the sale of the same.

## IV.    Overt Acts in Furtherance of the Conspiracy

17.    In or about August 2006, Schulz met with employees of the Defendant, including In-Sik Han ("Han") and Kyeong-Hwan Rho ("Rho"). During these meetings, the Defendant, acting through its employees, requested information regarding a number of topics, including the properties of DuPont's spinneret, issues with raw materials, and characteristics of polymer used in Kevlar manufacture.

18.    In or about September 2006, employees of the Defendant, including Rho, again met with Schulz. During this session, Schulz provided a significant amount of information to the Defendant regarding the Kevlar manufacturing process, such as a description of the deaerator used by DuPont, several hundred pages of a 1974 Kevlar Basic Data Document that provided a detailed description of the performance characteristics required for equipment to make Kevlar on a commercial scale, instructional materials that described DuPont's New Fiber Technology, and a compilation of Kevlar Polymerization Documents.

19.    Employees of the Defendant, including Han and Rho, continued to follow-up with Schulz by email and otherwise, seeking detailed descriptions regarding the Kevlar manufacturing process.

20.    From in or about March 2007 through in or about August 2008, employees of the Defendant met with Mitchell on at least six occasions, with employees Jong-Hyun Choi

("Choi"), Han, Ju-Wan Kim ("Kim"), Rho, and Young-Soo Seo ("Seo") each in attendance for at least one of the meetings with Mitchell.   Through these meetings and related email correspondence, the Defendant obtained a significant amount of DuPont's business information regarding Kevlar, including a Spruance Denier Economics document that contained a detailed breakdown of DuPont's capabilities and costs for the full line of its Kevlar products; a compilation of several documents that identified DuPont's Kevlar customers, the actual prices paid by those customers, and the quantity of product purchased by those customers; a Kevlar manufacturing plan document that contained DuPont's analysis of the mechanical rubber goods market, including market trends, assessment of competitors, ten year future premises, key uncertainties, and strategies and programs for specific Kevlar submarkets; and a compilation of DuPont information related to the Kevlar business including a portion of another Denier Economics spreadsheet.

21.     Mitchell made numerous telephone calls to employees of the Defendant and exchanged emails with these employees.  On more than one occasion, Mitchell advised employees of the Defendant that some of the information they sought was proprietary and that DuPont considered such information to be trade secrets.

22.     In or about September 2007, a former employee of Teijin approached the Defendant about a position as a sales representative.  The Defendant responded to this inquiry by attempting to retain the former Teijin employee as a consultant, and by asking the former Teijin employee to reveal certain information about Twaron.  The former Teijin employee considered the requested information regarding Twaron to be confidential, declined to provide the Defendant with any of the requested information, and was not retained by the Defendant in any capacity.

23.     In or about August 2008, Mitchell coordinated a meeting at a hotel in Richmond, Virginia, within the Eastern District of Virginia, to introduce the Defendant to a cooperating witness who pretended to be a disgruntled scientist from DuPont. Kim, Rho, and Seo attended the meeting on behalf of the Defendant. During the Richmond meeting, the cooperating witness was asked several technical questions by the Defendant's employees regarding the Kevlar production process. The cooperating witness stated his willingness to assist the Defendant and its employees, but emphasized his view that the information sought by the Defendant was sensitive and that DuPont believed such information to be trade secrets. Employees of the Defendant indicated that they would only be comfortable communicating with the cooperating source in a manner that was confidential and that would not leave an evidentiary trail.

24.     On or about February 3, 2009, DuPont filed suit against the Defendant in the Eastern District of Virginia, alleging theft of trade secrets. Thereafter, in or about February 2009, certain employees of the Defendant, including Choi, Han, Kim, Rho, and Seo, attempted to delete files and/or email items related to the consultants or the Heracron business from their work computers and work email accounts, and/or urged other employees of the Defendant to search for such materials and mark them for deletion.

\*     \*     \*     \*     \*

25.     The acts described in this Statement of Facts were done willfully and knowingly and with the specific intent to violate the law, and not by accident, mistake, inadvertence, or other innocent reason. Moreover, the acts of the Defendant's employees and agents described herein were performed within the scope of their employment and agency and were intended to benefit the Defendant.

26.    This Statement of Facts does not contain each and every fact known to the Defendant and to the United States concerning the Defendant's and others' involvement in the charges set forth in the Superseding Indictment.

**AGREED:**

**FOR KOLON INDUSTRIES, INC. (KSX NUMBER 120110):**

By: _____
Ee Gu Kang
Vice President

By: _____
Heiri Lee
General Counsel

By: _____
Jeffrey G. Randall
Mark D. Pollack
Paul Hastings LLP
Counsel for Kolon Industries, Inc.
and Kolon Corporation

**FOR KOLON CORPORATION (KSX NUMBER 002020):**

By: _____
Kwang Bok Yoon
Vice President

By: _____
Yongjob Jeon
Corporate Counsel and Deputy General Manager

C-9

By:   _____

Jeffrey G. Randall
Mark D. Pollack
Paul Hastings LLP
Counsel for Kolon Industries, Inc.
and Kolon Corporation


**FOR THE UNITED STATES:**

DANA J. BOENTE
United States Attorney


By:   _____

Kosta S. Stojilkovic
Assistant U.S. Attorney
Matthew Burke
Assistant U.S. Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, VA  22314
Tel:    (703) 299-3700
Fax:    (703) 299-3981
kosta.stojilkovic@usdoj.gov
matthew.burke@usdoj.gov


ANDREW WEISSMANN
Chief, Fraud Section
Criminal Division, U.S. Department of Justice


By:   _____

John W. Borchert
Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, N.W.
Washington, DC  20005
Tel:    (202) 514-2000
Fax:    (202) 514-7021
john.borchert@usdoj.gov


C-10

JOHN LYNCH
Chief, Computer Crime and Intellectual Property
Section, Criminal Division
United States Department of Justice

By:

Rodolfo Orjales
Senior Counsel
United States Department of Justice
Criminal Division, Computer Crime and
Intellectual Property Section
1301 New York Avenue, N.W.
Washington, DC  20005
Tel:    (202) 305-9200
Fax:    (202) 305-1744
rudy.orjales@usdoj.gov

C-11